IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. |
| V. | § | |
| | § | 3:02-CR-209-K |
| MOLLIE BLAKELY (02), | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Mollie Blakely's Motion for Reduction of Sentence

Pursuant to 18 U.S.C. § 3582(c)(2) (Doc. No. 72). Because the Court finds that a

sentence reduction is appropriate, the motion is **GRANTED**. Additionally, the Court

holds that the Federal Sentencing Guidelines ("the Guidelines") are advisory in the

context of an 18 U.S.C. § 3582(c)(2) sentence reduction pursuant to *United States v.

Booker*, 543 U.S. 220, 224 (2005), and *Kimbrough v. United States*, 128 S.Ct. 558, 564

(2007), as they would be at an original sentencing.

### I.     Factual and Procedural Background

Mollie Blakely ("Blakely") and a codefendant, Derrick Reed, were named in an

eight-count indictment filed in the United States District Court for the Northern District

of Texas on July 9, 2002. Blakely pleaded guilty to two counts in the

indictment—Possession with Intent to Distribute Crack Cocaine ("the crack charge") and

Possession of a Firearm during a Drug Trafficking Crime ("the firearm charge"). *See* 21

U.S.C. § 841(a)(1); 21 U.S.C. § 841(b)(1)(C); 18 U.S.C. § 2; 18 U.S.C. § 924(c)(1). Blakely's conviction on the firearm charge resulted in a mandatory minimum sentence of sixty months imprisonment to be served consecutively with any other sentence imposed. *See* 18 U.S.C. § 924(c)(1). Blakely's conviction on the crack charge, combined with her criminal history category and total offense level, resulted in a sentencing range of 51 to 63 months under the Guidelines. On November 22, 2002, Blakely was sentenced to a term of one-hundred-eleven (111) months in the custody of the United States Bureau of Prisons (Doc. No. 60). The district court sentenced Blakely to fifty-one months imprisonment on the crack charge, the lowest possible sentence under the Guidelines, and the mandatory minimum sixty months imprisonment on the firearm charge. Her scheduled release date is July 11, 2010, with a five-year term of supervised release to follow.

## II.    Sentencing Guidelines in Crack Cocaine Cases

At the time of Blakely's sentencing, "a drug trafficker dealing in crack cocaine [was] subject to the same sentence as one dealing in 100 times more powder cocaine" under the Guidelines. *Kimbrough v. United States*, 128 S.Ct. 558, 564 (2007). As the United States Supreme Court noted in *Kimbrough*, despite the chemical similarity between crack and powder cocaine, the substances are treated very differently by the Guidelines. *Id.* at 566. When Blakely was sentenced, the Guidelines yielded sentences for offenses involving crack that were three to six times longer than sentences for offenses

involving powder cocaine. *Id.*

Since the time of Blakely's sentencing, there have been several major developments in the law that apply to sentencing offenders in cases involving crack cocaine. In 2005, the Supreme Court instructed district courts to read the Guidelines as "effectively advisory" as part of its remedial opinion in *Booker*. *United States v. Booker*, 543 U.S. 220, 224 (2005). In November 2007, an amendment to the Guidelines became effective that reduced the base offense levels applicable to crack cocaine offenses by two levels ("Amendment 706"). *See* Sentencing Guidelines for United States Courts, 72 Fed. Reg. 28571–28572 (May 21, 2007) (submission to Congress concerning amendments effective November 1, 2007). In *Kimbrough*, the Supreme Court held that under *Booker*, the Guidelines for crack cocaine offenses, like all other Sentencing Guidelines, are advisory only. *Kimbrough*, 128 S.Ct. at 558. Even after the 2007 amendment, "the Guidelines now advance a crack/powder ratio that varies (at different offense levels) between 25 to 1 and 80 to 1." *Kimbrough*, 128 S.Ct. at 573; *see also* United States Sentencing Commission, Guidelines Manual § 2D1.1 (Nov. 2008) ("USSG") (providing the same base offense level for 400 to 500 grams of powder cocaine and 5 to 20 grams of crack, for instance).

On December 11, 2007—one day after *Kimbrough* was decided—the Sentencing Commission voted to make Amendment 706 retroactive, effective March 3, 2008. *See* USSG app. C, amend. 711 (Supp. 2007) & amend. 713 (Supp. 2008). Before

addressing the legal issue raised in the case at bar, the Court first considers the development of the law pertaining to the Guidelines in more depth.

### A.    The Guidelines Become Advisory in *Booker*

Freddie J. Booker was convicted of possession with intent to distribute at least 50 grams of cocaine base (crack) in violation of 21 U.S.C. § 841(a)(1). *Booker*, 543 U.S. at 227. The statute under which Booker was convicted provided for a minimum sentence of ten years in prison and a maximum sentence of life in prison for that offense. *Id*.; *see* 21 U.S.C. § 841(b)(1)(A)(iii). The Guidelines, generally considered mandatory at the time of Booker's sentencing, required the district court to sentence him to a term of 210 to 262 months based on the quantity of drugs the jury found that he possessed and his criminal history. *Booker*, 543 U.S. at 227. At a post-trial sentencing proceeding, the district judge found by a preponderance of the evidence that Booker had possessed an additional 566 grams of crack, and that Booker was guilty of obstructing justice. *Id*. Based on those additional findings, the Guidelines mandated that the judge sentence Booker to a term of 360 months to life in prison. *Id*. Opting for a sentence at the low end of the range, the judge sentenced Booker to 360 months—30 years—in prison.

On appeal, Booker argued that the district court's application of the Guidelines violated his Sixth Amendment right to a jury trial and the Supreme Court's holding in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In *Apprendi*, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond

the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. In support of his position, Booker pointed to the Supreme Court's holding in *(Ralph) Blakely v. Washington*, 542 U.S. 296 (2004), that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Blakely*, 542 U.S. at 303 (emphasis in original). It followed, Booker argued, that because the Guidelines were mandatory, they imposed a statutory maximum sentence for purposes of the *Apprendi* analysis. *Booker*, 543 U.S. at 228. The Supreme Court agreed with Booker, holding that the imposition of an enhanced sentence under the Guidelines violated the Sixth Amendment when it was based on the sentencing judge's determination of a fact (other than a prior conviction) that was not found by the jury or admitted by the defendant. *Id*. at 244.

The Supreme Court then turned to the difficult issue of determining the proper remedy for the constitutional wrong created by certain applications of the Guidelines. Rather than completely invalidating the Guidelines, the Supreme Court attempted to cure the constitutional problem and preserve the remainder of the statute. *Booker*, 543 U.S. at 258–65. The Court found that if the Guidelines were not mandatory, they would not violate the Sixth Amendment as construed in *Apprendi*. *Id.* at 259. Ultimately, the Court decided to sever two statutory provisions—one that made the Guidelines mandatory and one provision dealing with appellate review that assumed the

Guidelines were mandatory. *Id.* Having severed the provision that made the Guidelines mandatory, the Court instructed district courts to read the Guidelines as "effectively advisory." *Id.* at 245. In reaching its decision to make the Guidelines advisory in *all* contexts, the Court rejected the possibility of making the Guidelines advisory only in those cases in which a Sixth Amendment issue was presented, noting that "Congress would not have authorized a mandatory system in some cases and a nonmandatory system in others." *Id*. at 266; *see id.* ("[W]e do not see how it is possible to leave the Guidelines as binding in other cases.").

### B.     The Cocaine Guidelines are Held to be Advisory in *Kimbrough*

In *Kimbrough v. United States*, the Supreme Court addressed the scope of its remedial opinion in *Booker*. Derrick Kimbrough was convicted of possession of more than fifty grams of crack and other drug and gun related offenses. *Kimbrough*, 128 S.Ct. at 564. After determining Kimbrough's criminal history category and considering other factors, the district court determined that Kimbrough's final advisory Guidelines range was 228 to 270 months. *Id*. at 565. The statutory range of punishment for the case was 180 months to life imprisonment. *Id*. at 564. The district court concluded that a sentence in the Guideline range was "'greater than necessary' to accomplish the purposes of sentencing set forth in 18 U.S.C. § 3553(a)." *Id*. The district court commented that the case demonstrated the "disproportionate and unjust effect that crack cocaine guidelines have in sentencing." *Id*. By contrast, the district court noted that

Kimbrough's Guideline range would have been 97 to 106 months had he been accountable for powder cocaine instead of crack. *Id*. Concluding that the statutory minimum for Kimbrough's offenses was sufficient to accomplish the sentencing objectives outlined in 18 U.S.C. § 3553(a), the district court sentenced Kimbrough to a term of 180 months in prison, the statutory mandatory minimum. *Id*.

The United States Court of Appeals for the Fourth Circuit vacated Kimbrough's sentence, holding that the sentence was per se unreasonable because it was based on a disagreement with the sentencing disparity for crack and powder cocaine offenses. *Id*. The Supreme Court granted certiorari to decide "whether the crack/powder disparity adopted in the United States Sentencing Guidelines has been rendered 'advisory' by [the Court's] decision in *Booker*." *Id*. at 565-66.

The Supreme Court noted that despite the chemical similarity between crack and powder cocaine, the substances are "handled very differently for sentencing purposes." *Id*. at 566. After detailing the historical development of the disparity in crack and powder cocaine sentencing, the Court turned to the issue of whether *Booker* rendered the disparity in the Guidelines advisory. *See Kimbrough*, 128 S.Ct. at 566–69. The Court concluded that "the cocaine Guidelines, *like all other Guidelines*, are advisory only, and the Court of Appeals erred in holding the crack/powder disparity effectively mandatory." *Id*. at 564 (emphasis added).

### C. The Commission Amends the Guidelines (Amendment 706)

As the Supreme Court noted in *Kimbrough*, the Sentencing Commission has made numerous attempts in recent years to correct the unwarranted disparity between crack and powder cocaine sentencing. *Kimbrough*, 128 S.Ct. at 569. In 1995, the Commission proposed amending the Guidelines to replace the 100:1 ratio with a 1:1 ratio. *Id*. Subsequently, the Commission has recommended lowering the ratio on multiple other occasions. Most recently, the Commission adopted an ameliorating provision, Amendment 706, which reduced the base offense level for each quantity of crack by two levels. *Id*. As the Supreme Court noted in *Kimbrough*, "this modest amendment yields sentences for crack offenses between two and five times longer than sentences for equal amounts of powder." *Id*. at 569. "Describing the amendment as 'only . . . a partial remedy' for the problems generated by the crack/powder disparity, the Commission noted that '[a]ny comprehensive solution requires appropriate legislative action by Congress.'" *Id*. (citing United States Sentencing Commission, Special Report to Congress: Cocaine and Federal Sentencing Policy 10 (May 2007)).

D.     **The Sentencing Commission Makes Amendment 706 Retroactive**

On December 7, 2007, the Commission decided to make Amendment 706 retroactive, thus allowing individuals who had been sentenced for crack offenses under the pre-amendment version of the Guidelines to seek a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2). USSG app. C, amend. 711 (Supp. 2007). The Commission established March 3, 2008, as the effective date for the retroactive application of

Amendment 706. *Id.* Blakely now moves the Court for a reduction of her sentence pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 706.

### III.    Legal Standard for § 3582(c)(2) Sentence Reduction

In relevant part, 18 U.S.C. § 3582(c)(2) provides that "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . the court may reduce the term of imprisonment after considering the factors set forth in 3553(a) . . . if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). The policy statement applicable in this case provides in relevant portion that "the court shall not reduce the defendant's term of imprisonment . . . to a term that is less than the minimum of the amended guideline range." USSG § 1B1.10(b)(2)(A).

The parties agree that, at a minimum, a two-level reduction in Blakely's sentence is appropriate. The dispute in this case focuses on whether the Court, pursuant to the Supreme Court's remedial opinion in *Booker*, has the discretion to treat the Sentencing Commission's mandate as advisory. The Court finds it does have this discretion.

### A.    Blakely's Position

Blakely argues that the amended Guideline range considered by the Court at a § 3582(c) resentencing, like at an original sentencing, is merely advisory. In support of her position, Blakely points the Court to *United States v. Hicks*, 472 F.3d 1167 (9th Cir.

2007).

In *Hicks*, the Ninth Circuit squarely addressed the issue of whether *Booker's* instruction that district courts treat the Guidelines as advisory applies to the resentencing of defendants pursuant to 18 U.S.C. § 3582(c)(2). *Hicks*, 472 F.3d at 1168. The *Hicks* court held that the Guidelines were advisory even in the context of a § 3582(c)(2) resentencing. *Id.* The Ninth Circuit reasoned that *Booker's* remedial opinion made the Guidelines advisory without exception. *Id.* at 1170. The court noted that "*Booker* expressly rejected the idea that the Guidelines might be advisory in certain contexts but not in others, and Congress has done nothing to undermine this conclusion." *Id.* at 1170; *but see United States v. Strothers*, 2008 WL 2473686, at \*5 (W.D. Pa. Jun. 19, 2008) (finding *Hicks* unpersuasive because it considered an earlier version of USSG § 1B1.10 that did not explicitly prohibit sentencing below the amended guideline range).

Several courts have followed *Hicks*. One notable opinion is that of Judge Charles P. Kocoras in the Northern District of Illinois:

> In holding that a mandatory system is no longer an open choice, to the extent that policy statements would have the effect of making the Guidelines mandatory, *Booker* established that they must be void. *Booker* emphasized that the Guidelines could not be construed as mandatory in one context and advisory in another. As a consequence, district courts are necessarily endowed with the discretion to employ the § 3553 factors when issuing new sentences under § 3582(c)(2). The ease and simplicity of mandatory calculations can no longer stand as a substitute for the evaluation of relevant factors necessary to a determination of just punishment.

*United States v. Shelby*, 2008 WL 2622828, at *2 (N.D. Ill. June 30, 2008) (internal citations omitted); *but see United States v. Thomas*, 566 F. Supp. 2d 830, app. (N.D. Ill. 2008) (quoting *United States v. Witherspoon*, No. 1:02-CR-0491-1, (N.D. Ill. Apr. 28, 2008) (finding "a court is prohibited from making a reduction below the amended Guideline range" in § 3582(c)(2) proceedings, except as allowed by the Guidelines).

## B.    The Government's Position

The Government concedes that *Hicks* is on point with the issue raised in this case, but argues that the Court should not follow the Ninth Circuit.   The Government contends that "Section 3582(c)(2) is a very limited form of relief that allows a court to reduce a sentence based on a retroactive Guideline amendment only to the extent authorized by the Commission."  Pl.'s Resp. 11.  The Government argues that Congress granted the Commission the power to determine "whether and to what extent its amendments reducing sentences will be given retroactive effect."  *Id.* at 12 (citing *Braxton v. United States*, 500 U.S. 344 (1991)).   In support of its position, the Government points the Court to 28 U.S.C. § 994(u), which provides:

> If the Commission reduces the term of imprisonment recommended in the guidelines applicable to a particular offense or category of offenses, it shall specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced.

28 U.S.C. § 994(u).  The Government contends that the limits imposed by USSG § 1B1.10, when read in conjunction with § 3582(c)(2) and § 994(u), are akin to statutory

mandatory minimums. The Government also argues that *Booker* is inapposite because its remedial opinion was designed to address a Sixth Amendment right-to-jury trial issue, which is not raised in this case. The Government asserts that no Sixth Amendment issue could be raised in a § 3582(c)(2) resentencing because a sentence can be decreased, but never increased, in such a proceeding—a one-way lever. Instead, the Government argues that the Court is bound to modify Blakely's within the Guideline range and may not depart downward.

The Government strenuously argues that a sentence modification under 18 U.S.C. § 3582 is not "resentencing," but rather a "a limited mechanism only for reducing a sentence to account for a retroactive Guideline amendment." Pl.'s Resp. 18. As such, the Government argues, § 3582(c)(2) provides a jurisdictional limit on the court's authority to reduce a sentence. The policy statement accompanying the applicable Guidelines provision states that "proceedings under 18 U.S.C. § 3582(c)(2) and this policy statement do not constitute a full resentencing of the defendant." USSG § 1B1.10(a)(3).

This position was bolstered by the Tenth Circuit in *United States v. Rhodes*, 549 F.3d 833 (10th Cir. 2008), finding "the Ninth Circuit erroneously concluded that the remedial portion of the *Booker* decision, which rendered the guidelines effectively advisory for purposes of original sentencing proceedings, applied to § 3582(c)(2) proceedings as well." *Rhodes*, 549 F.3d at 841; *see also United States v. Dunphy*, — F.3d

— , 2009 WL 19139, at *8 (4th Cir. Jan. 5, 2009) ("[I]n an 18 U.S.C § 3582(c) resentencing hearing, a district judge is not authorized to reduce a defendant's sentence below the amended guideline range."). Directly disagreeing with the Ninth Circuit's ruling in *Hicks*, the Tenth Circuit found the Sentencing Commission's "policy statement is binding on district courts pursuant to § 3582(c)(2)" and the district court "lacked the authority to impose a modified sentence that fell below the amended guideline range." *Rhodes*, 549 F.3d at 841.

The Government believes courts should not deviate from the Guideline range for defendants who simply "enjoy the fortuity of having a retroactive Guideline amendment applied to one aspect of their sentences." Pl.'s Resp. 20. Indeed, the Government believes the Court absolutely may not depart downward, citing the Guidelines: "The court *shall not* reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement to a term that is less than the minimum of the amended guideline range . . . ." USSG § 1B1.10 (emphasis added). The Government further contends the Court should "adher[e] to the limits imposed by the [Sentencing] Commission" and "abide by these restrictions." Pl.'s Resp. 20. As a result, Blakely's modified sentence for the crack charge under the amended Guidelines would be forty-one to fifty-one months. The mandatory minimum on the firearm charge is unchanged and remains at sixty months. Thus, the Government contends the Court may reduce Blakely's total sentence by no more than ten months, moving her release date up to

September 2009.

## C. The Court Follows *Booker* and *Kimbrough*

The Court chooses to take the Supreme Court at its word. The Supreme Court, through its holdings in *Booker* and *Kimbrough*, has made it clear that the Guidelines are not mandatory. *Booker*, 543 U.S. at 245 (stating that its holding "makes the Guidelines effectively advisory"); *Kimbrough*, 128 S.Ct. at 564 (noting that "the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence"). Consequently, the Court disagrees with the Government's position and follows the line of reasoning in *Hicks* and the district court cases finding the Guidelines advisory in the context of a sentence modification pursuant to § 3582(c)(2).

While the language of § 3582(c)(2) and § 994(u) certainly appear to delegate authority to the Sentencing Commission to make the Guidelines mandatory in the context of a resentencing or sentence modification proceeding, the Court believes that the holding in *Booker*'s remedial opinion prevents the Commission from making the Guidelines effectively mandatory pursuant to that delegation. The Tenth Circuit in *Rhodes* concluded "that *Booker* simply has no bearing on sentencing modification proceedings conducted under § 3582(c)(2)." *Rhodes*, 549 F.3d at 840. The *Rhodes* opinion appears to rest on two grounds for its holding: there is no Sixth Amendment right to jury trial issue is raised in a § 3582(c)(2) proceeding and "sentence modification proceedings" have a different statutory basis than the provisions considered in *Booker*.

*Id.*

Yet as the Government even notes in its brief, the Supreme Court in *Booker* "applied its advisory Guidelines remedy to cases in which no Sixth Amendment violation existed, concluding that Congress would not have wanted the Guidelines to be mandatory in some contexts and advisory in others." Pl.'s Resp. 16 (citing *Booker*, 543 U.S. at 266). The Government would have this Court find that although the Supreme Court declared the Guidelines themselves advisory, a policy statement that informs the Guidelines is mandatory and binding. This Court declines to do so. There was nothing in the language of the Court's opinion in *Booker* that left open the possibility that the Guidelines remained mandatory in some contexts. *See United States v. Ragland*, 568 F. Supp. 2d 19, 27 (D.D.C. 2008) ("To treat the new amended Guidelines range as mandatory—just because the Commission issued a policy statement explicitly attempting to make it mandatory—would be to repeat the constitutional error of the pre-*Booker* system of mandatory Guidelines.").

If the Court adopted the Government's position, it would create a system in which the Guidelines would be effectively mandatory instead of "effectively advisory." Indeed, the Government equates them to mandatory minimum sentences in this context, a position supported by some courts. "[T]he limits § 3582(c)(2) and U.S.S.G. § 1B1.10 impose on the extent of reductions are, at most, the equivalent of mandatory minimum sentences. . . ." *United States v. Dunphy*, — F.3d — , 2009 WL 19139, at *4 n.3 (4th Cir.

Jan. 5, 2009); *United States v. Speights*, 561 F. Supp. 2d 1277, 1280 (S.D. Ala. 2008) (comparing application of *Booker* to § 3582(c)(2) proceedings with applying *Booker* to sentence a defendant below statutory mandatory minimums). Such arguments are readily distinguishable: mandatory minimums are passed by Congress, signed into law by the President, and have been repeatedly upheld by the Supreme Court in cases such as *Harris v. United States*, 536 U.S. 545, 568–69 (2002). The Sentencing Guidelines, in contrast, are approved by a seven-member panel exercising limited, delegated congressional power and have been repeatedly declared advisory by the Supreme Court in *Booker* and its progeny. Congress may limit judicial sentencing discretion. *Ex parte United States*, 242 U.S. 27, 42 (1916); *see also Mistretta v. United States*, 488 U.S. 361, 388 (1989) (citing "the legislative responsibility for establishing minimum and maximum penalties for every crime"). The Sentencing Commission may not. To be sure, a court must "give respectful consideration to the Guidelines." *Gall v. United States*, 128 S.Ct. 586, 594 (2007). Yet *Booker* counsels—in broad constitutional terms—that the Sentencing Commission's guidelines are advisory in all contexts. *Kimbrough*, 128 S.Ct. at 564 (holding that "[U]nder *Booker*, the cocaine Guidelines, like all other Guidelines, are advisory only"). They cannot be made mandatory simply through the application of a policy statement. Cases rejecting *Hicks* because it considered a prior version of USSG § 1B1.10(b) make a distinction without a difference: because the Guidelines are advisory, whatever version the Ninth Circuit considered in its opinion is immaterial to

this analysis. A court may be bound to consider the Guidelines, but only in an advisory context. The Supreme Court reiterates this principle with regularity, amplifying and clarifying it each time to restate "that district courts are entitled to vary from the crack-cocaine guidelines." *Spears v. United States*, No. 08-5721, slip op. at 6 (U.S. Jan. 21, 2009); *see id.* at 4 (defining "the point of *Kimbrough*" as "a recognition of district courts' authority to vary from the crack cocaine Guidelines based on *policy* disagreement with them. . . .") (emphasis in original). Because *Booker* and its progeny have made the Guidelines advisory without exception, the Court believes that the Government's construction of the Guidelines is inconsistent with the Supreme Court's mandate.

The Court is similarly unpersuaded by the Government's argument that *Booker* is inapplicable because a § 3582(c)(2) proceeding is not a "full resentencing." The Ninth Circuit effectively dealt with this argument. *See Hicks*, 472 F.3d at 1171 ("The dichotomy drawn by the government, where full re-sentencings are performed under an advisory system while 'reduction proceedings,' or 'modifications,' rely on a mandatory Guideline system, is false."). *Booker* may not apply retroactively to grant a sentence reduction, but the crack amendment does. In a resulting § 3582(c)(2) proceeding, the Court's consideration of the requested modification is retrospective and may consider the advisory nature of the Guidelines. *See United States v. Jones*, 2008 WL 5101139, at *1 n.2 (D. Colo. Nov. 25, 2008) ("[W]e must look back (i.e., 'retrospectively') through the lens of a constitutional regulatory apparatus that now provides that the Sentencing

Guidelines and the Sentencing Commission policy statements that inform them, are advisory only.").  The Court does not find that the instant action is a "full resentencing," *see United States v. Alvarez*, 210 F.3d 309, 310 (5th Cir. 2000) (stating that § 3582 "governs the imposition and subsequent *modification* of a sentence of imprisonment") (emphasis added), but the Government's argument seeks to impose an overly technical limitation on the substantive constitutional provisions of Supreme Court decisions in *Booker*, *Kimbrough*, and *Gall*.  *See Hicks*, 472 F.3d at 1173 ("*Booker* makes clear that the Guidelines are no longer mandatory in any context—its effect is not restricted to the 'de novo resentencing' which the government seeks to distinguish.").

Asserting that defendants are simply recipients of "fortuity" trivializes the considered opinion of the many policymakers and advocates who fought for the crack amendment—including the Sentencing Commission, which declared that applying the Guideline amendment retroactively in crack cocaine cases was a "partial step" in solving a "fundamental unfairness in Federal sentencing policy" and "mitigating the unwarranted sentencing disparity that exists between Federal powder and crack cocaine defendants." United States Sentencing Commission, News Release, Dec. 11, 2007 (available at http://www.ussc.gov/PRESS/rel121107.htm).  Simply put, the retroactivity is key: these defendants should receive the same sentence now they would have received at their original sentencing were the fairer, amended, advisory Guidelines in place and subject to the factors of § 3553(a).

The Court recognizes that this case presents a close legal issue. Reasonable minds differ on the question of whether the Guidelines are effectively mandatory at a § 3582(c)(2) resentencing, as evidenced in the directly divergent opinions of the Ninth and Tenth circuits. There is a further split among the judges of the Tenth Circuit: "While I disagree with *United States v. Rhodes* for creating a circuit split by rejecting *United States v. Hicks*, for now, to the extent that *Rhodes* applies to this case, we are bound by it." *United States v. Pedraza*, 2008 WL 5274446, at *4 (10th Cir. Dec. 22, 2008) (McKay, J., dissenting) (internal citations omitted). Judge Monroe G. McKay said he would apply the rule of lenity to this ambiguous statutory scheme:

> My view is reinforced by what has happened since *United States v. Booker*. The appellate courts have increasingly been mandated to rely on trial court discretion in sentencing unless clearly prohibited. In that spirit, and applying the rule of lenity to cases arising before the amendment to the guidelines, I would remand and hold that at resentencing the trial court has the discretion to vary downward to the sentence it would have given if it did not feel constrained to treat the bottom of the amended guidelines range as a mandatory floor.

*Id.* at *5. The rule of lenity is invoked in the context of criminal punishments to remedy a "grievous ambiguity or uncertainty" in what Congress intended. *Muscarello v. United States*, 524 U.S. 125, 138–39 (1998); *see also* BLACK'S LAW DICTIONARY 1332 (8th ed. 2004) ("[A] court, in construing an ambiguous criminal statute that sets out multiple or inconsistent punishments, should resolve the ambiguity in favor of the more lenient punishment."). Judge McKay's invocation of the rule of lenity gains traction in light of congressional inaction on the statute following *Booker*. *See* 18 U.S.C.A. § 3582 (West

2008) (showing the last amendment to § 3582 occurred in 2002, and the last amendment to § 3582(c)(2) occurred in 1988). This is effectively the same path the Supreme Court took in *Booker*'s remedial opinion, and the Court must determine what "Congress would have intended" under *Booker*'s constitutional holding. *Booker*, 543 U.S. at 246. With *Booker* holding the Guidelines themselves advisory, it is doubtful that Congress would have intended to make a policy statement underlying the Guidelines mandatory. This ambiguity counsels lenity.

Nevertheless, the Fourth and Eighth circuits have followed the Tenth Circuit's lead. *See United States v. Starks*, — F.3d — , 2009 WL 66115 (8th Cir. Jan. 13, 2009); *United States v. Dunphy*, — F.3d — , 2009 WL 19139 (4th Cir. Jan. 5, 2009). The Fourth Circuit panel read *Booker* narrowly to find the Supreme Court only requires "guideline provisions to be advisory *at full sentencing proceedings*." *Dunphy*, 2009 WL 19139 at *5 (emphasis in original). In contrast, "(1) this proceeding allows only for downward adjustment and (2) this proceeding is not a full resentencing hearing." *Id.* at *6. The Eighth Circuit adopted the Tenth Circuit's reasoning from *Rhodes*, "finding clear and significant differences between original sentencing proceedings and sentence modification proceedings." *Starks*, 2009 WL 66115, at *2 (citing *Rhodes*, 549 F.3d at 840).

The Fourth Circuit in *Dunphy* further found an inconsistency in a defendant claiming the benefits offered by the Sentencing Commission's retroactivity decision while

disclaiming its limit to allow for no more than a two-level reduction. The panel took umbrage that the defendant "would apparently have this Court give full effect under § 3582(c) to the portion of § 1B1.10 designating Amendment 706 as retroactive, but conveniently ignore the remainder of the same policy statement." *Id.* at *7 n.9 (internal citation omitted).

Allowing sentence reductions while limiting defendants to no more than a two-level Guideline decrease is a half-a-loaf solution to the intractable problem of the crack/powder disparity. Although better than nothing, this still creates a mandatory Guideline scheme in this area and thus falls far short of the Supreme Court's holdings in *Booker*. This Court cannot find that the Sentencing Commission may nullify the broad mandate of the Supreme Court through a simple and shifting policy statement. Such a position is troubling and ignores the evolution of the *Booker* principles in later decisions like *Kimbrough* and *Gall*. Even a considered policy statement may not do something unconstitutional—like making the Sentencing Guidelines mandatory—and courts may sever such provisions from those that pass constitutional muster. *See Kimbrough*, 128 S.Ct. 246–49 (engaging in detailed severability analysis). This is not a camel's nose under the tent; the camel has been in the tent since *Booker*. Congress and the Sentencing Commission were well aware that the Supreme Court had declared the Guidelines advisory when the crack retroactivity amendment was passed. Exactly why the Government insists they remain mandatory in this one vestigial area is unclear.

The Fourth Circuit expressed prudential concerns. "[A]pplying *Booker* in § 3582(c) proceedings would create patent inequity among convicted defendants" and "would create administrative complexities and vastly expand the scope of a sentencing reduction proceeding." *Id.* at *5–6. But some administrative complexity is to be expected anytime a court modifies a sentence, and sentencing is not an exact science that can remove all inequity. The Supreme Court has effectively dealt with this illusory administrative quandary. *See Kimbrough*, 128 S.Ct. 574 ("[O]ur opinion in *Booker* recognized that some departures from uniformity were a necessary cost of the remedy we adopted."). Furthermore, "as to crack cocaine sentences in particular, we note a congressional control on disparities: possible variations among district courts are constrained by the mandatory minimums Congress prescribed . . . ." *Id.* It is becoming cumbersome for the Supreme Court to be forced to revisit the issue in each minute context only to declare once again that, yes, the Guidelines are advisory. Applying the § 3553(a) factors to § 3582(c) sentence reductions only serves to eliminate the patent inequity that currently exists for defendants who were sentenced under an unconstitutional mandatory Guideline scheme.

The First Circuit declined to reach the issue in a case involving a career offender who was ineligible for a sentence reduction anyway. "[W]e take no view on the question of whether a defendant who satisfies the threshold requirement of section 3582(c)(2) is entitled to a full resentencing, *see, e.g., United States, v. Hicks*, 472 F.3d 1167, 1173 (9th

Cir. 2007), or merely to a reduction that reflects a mechanical substitution of the amended guideline for the original guideline." *United States v. Caraballo*, — F.3d — , 2008 WL 5274853, at *5 n.4 (1st Cir. Dec. 22, 2008). The Eleventh Circuit similarly did not reach the issue. *See United States v. Brodie*, 2009 WL 82835, at *2 (11th Cir. Jan. 14, 2009) ("[W]e need not resolve this question here.").

The Fifth Circuit has not weighed in on the issue. *See United States v. Robinson*, 542 F.3d 1045, 1052 (5th Cir. 2008) (noting that it has not decided "whether *Booker* applies to § 3582(c)(2) proceedings (as the Ninth Circuit has held), rendering the process set out in USSG § 1B1.10(b) advisory and granting the district court more discretion in crafting a new sentence").

District courts have similarly diverged on the issue, even within this judicial district. *See United States v. Cruz*, 2008 WL 5136968, at *1 (N.D. Tex. Dec. 4, 2008) (Fitzwater, C.J.) ("The court agrees with the government that Cruz is not entitled to be resentenced under the advisory guidelines or below the new guideline range."). Indeed, many federal district courts have found that *Booker* is inapplicable at a § 3582(c)(2) proceeding, and the Sentencing Guidelines are mandatory. *See, e.g., United States v. Bell*, 2008 WL 5062335 (W.D. La. Nov. 24, 2008); *Speights*, 561 F. Supp. 2d 1277; *United States v. Finney*, 2008 WL 2435559 (W.D. Pa. June 16, 2008); *United States v. Julien*, 2008 WL 1933340 (D. Me. May 2, 2008); *Montes v. United States*, 2008 WL 906079 (S.D.N.Y. Apr. 3, 2008).

On the other hand, a number of district courts have found exactly the opposite and adopted reasoning akin to the Ninth Circuit in *Hicks*. *See, e.g., Jones*, 2008 WL 5101139, at *1 ("[T]he Sentencing Commission cannot abrogate the Supreme Court's constitutional determination that the Sentencing Guidelines are advisory."); *United States v. Reid*, — F.Supp. 2d — , 2008 WL 4826062 (D.D.C. Nov. 6, 2008); *Ragland*, 568 F. Supp. 2d 19; *Shelby*, 2008 WL 2622828; *United States v. Forty Estremera*, 498 F. Supp. 2d 468 (D.P.R. 2007).

Many more simply don't know. *See, e.g., United States v. Perez*, 2008 WL 2309497, at *1 (D. Neb. June 4, 2008) (Kopf, J.) ("I have not the slightest idea whether the Supreme Court's recent sentencing opinions apply in this circumstance.").

Absent binding precedent on the issue, the Court declines to find the Guidelines are mandatory in the context of a sentence reduction under § 3582(c)(2).

### III.    Blakely's Sentence Reduction

In resentencing an eligible defendant under § 3582(c)(2), the Court must consider the factors outlined in § 3553(a) and impose a sentence that is sufficient, but not greater than necessary to serve the purpose of the sentencing objectives. Among other factors, 18 U.S.C. § 3553(a) directs the Court to consider "the nature and the circumstances of the offense, and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). Additionally, the Court must consider "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide

just punishment for the offense." 18 U.S.C. § 3553(a)(2). As part of this analysis, the Court considers the amended Guideline range, the facts underlying the original offense, and the defendant's conduct while incarcerated.

### A.     The Nature and Circumstances of the Offense

The Court has reviewed the Presentence Report ("PSR") and the transcript of the original sentencing. Blakely's conviction on the crack charge stemmed from the fact that she and a codefendant were selling crack cocaine to an undercover ATF officer and confidential informant from their residence in southeast Dallas. Blakely's conviction on the related firearms charge was based on her constructive possession of a pistol and shotgun found at the residence, although she was never observed in actual possession of either weapon. Conversely, her codefendant was observed with the same pistol, for which Blakely was found in possession, in his lap. Reed, according to the PSR, said he had prior military experience as a weapons specialist and personally repaired the shotgun. There is no indication that Blakely was ever in actual possession of either gun. The PSR notes that she admitted her guilt and cooperated with the government's investigation.

Thus, as far as Blakely's involvement, this is an ordinary, run-of-the-mill drug offense—indeed a "mine-run case" like those mentioned by the Supreme Court in reiterating that the Guidelines are advisory in such cases. *See Kimbrough*, 128 S.Ct. at 575 ("[I]t would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence

'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case."). *Cf.*
WILLIAM SAFIRE, THE RIGHT WORD IN THE RIGHT PLACE AT THE RIGHT TIME 199 (2004)
("Mine run . . . is an extraordinary way of saying 'ordinary.'").

As noted in the PSR, "[t]he quantities sold by [Blakely and her codefendant] were
minimal amounts." Blakely and Reed appear to have sold roughly $500 worth of crack
to the ATF undercover officer over the span of about two months. The entire amount
of crack involved in the case totaled 6.35 grams—slightly more than the weight of a
quarter. For the weight of a quarter, *see* U.S. Mint, Coin Specifications, *available at*
http://www.usmint.gov/about_the_mint/?action=coin_specifications (1 quarter = 5.670
grams). Given the minimal amount of drugs involved in the case and the fact that
Blakely's possession of the firearms was constructive, the Court believes the nature and
circumstances of the offense justify a sentence below the lower end of the amended
Guideline range.

### B. History and Characteristics of Blakely

Blakely had a criminal history score of 3 and has a Criminal History Category II.
She was convicted on state court charges of credit card abuse for charging apparel and
a ring to another person's department store credit card in 1985 and was convicted of
theft for attempting to shoplift $23.13 in cigarettes and personal hygiene products in
1991.

During her seventy-eight-month incarceration, Blakely, now 57 years old, has had

no disciplinary infractions. She is currently housed at the Federal Medical Center—Carswell, in Fort Worth, Texas, where she has been designated a trustee and given special privileges, including the ability to clean various areas with limited supervision. Blakely argues, and the Government does not dispute, that she has been a model prisoner and has sought to better herself during her incarceration. Specifically, Blakely has completed many classes offered by the Bureau of Prisons, including: 1) life skills; 2) road to wise money management; 3) budgeting; 4) drug education; and 5) several health and fitness classes. Citing Sentencing Commission statistics, Blakely's counsel credibly asserts she has a 19 percent chance of recidivism. Def.'s Supp. Br. 16. Blakely states that she has a place to live and a plan for a job upon release. It is difficult to imagine a defendant more deserving of a sentence reduction under the retroactive crack amendment, and it is impossible to believe that keeping Blakely in prison benefits either her or society. Even if her crime was ordinary, her conduct since that time has been exemplary. The Court, considering Blakely's minimal prior criminal history and her remedial efforts while in prison, believes her history and characteristics justify a sentence below the lower end of the amended Guideline range.

### C.     Need for the Sentence Imposed

The Court believes the sentence originally imposed is greater than necessary, and a two-level reduction is not sufficient to achieve the purposes of the sentencing objectives without being greater than necessary. Additionally, the Court is of the opinion that a

lesser, more appropriate sentence would promote greater respect for the law, particularly in communities ravaged by the crack cocaine epidemic and aggrieved by the stark sentencing disparity between crack and powder cocaine.

The Court notes that the Guidelines were almost universally thought to be mandatory at the time of Blakely's original sentencing, meaning that the sentencing judge likely thought he was unable to exercise his discretion to issue a below-Guidelines sentence. At the original sentencing, the Court issued the lowest sentence for the crack charge that it thought it had discretion to issue. *See* Sentencing Transcript, *United States v. Blakely*, No. 3:02-CR-209-H (N.D. Tex. Nov. 20, 2002) (Sanders, J.) ("I sentence her to custody for 51 months on Count 7. That is the minimum allowed under the law."). It is worth noting that Blakely's original sentencing judge, U.S. District Judge Barefoot Sanders, had publicly and unequivocally expressed his disagreement with the sentencing disparity between crack and powder cocaine. *See* David M. Zlotnick, *The Future of Federal Sentencing Policy: Learning Lessons From Republican Judicial Appointees in the Guidelines Era*, 79 U. Colo L. Rev. 1, n. 102 (2008) (quoting a 1997 letter to the chairmen of the House and Senate judiciary committees in which Judge Sanders joined twenty-seven other federal judges who were former United States Attorneys to decry a disparity that leads to "sentences that are unjust and do not serve society's interest").

Having determined that the Guidelines are advisory in the context of a § 3582(c)(2) sentence modification and applying the factors of § 3553(a), the Court

concludes that a sentence below the minimum of the amended Guideline range is appropriate. The Court notes that Blakely has already served some seventy-eight months in prison, more than the mandatory sixty months for the firearm charge. The Court finds eighteen months served for the crack charge is adequate. Therefore, in the interest of justice, the Court will reduce Mollie Blakely's sentence to **TIME SERVED**.

### IV.     Conclusion

Blakely's Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(2) is **GRANTED**. The Court will issue a separate order reducing Blakely's sentence.

**SO ORDERED.**

Signed January 23rd, 2009.

*Ed Kinkeade*
_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE